IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **BRITTNEY S. FOSTER** § | |
| *Plaintiff* § | |
| § | Civ. No. 04:19-01839 |
| **V.** § | |
| § | **JURY DEMANDED** |
| **CATHOLIC HEALTH INITIATIVES** § | |
| **(n/k/a) COMMON SPIRIT HEALTH** § | |
| *Defendant* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff, BRITTNEY FOSTER, complaining of CATHOLIC HEALTH INITIATIVES shows:

### I. PRELIMINARY STATEMENT

This lawsuit seeks damages from Catholic Health Initiatives (n/k/a) Common Spirit Health ("hereinafter CHI") for violations of the Family and Medical Leave Act (29 U.S.C. §2601 *et. seq*), the Americans with Disabilities Act and Texas Administrative Code §217.19. Specifically, Plaintiff alleges that she was terminated from her employment for exercising her rights to take medical leave, because she is disabled or perceived to be disabled, and her termination was done in bad faith and without affording her due process as required by Texas statutes.

### II. JURISDICTION

1.  This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. §1331 (federal question) since Plaintiff is bringing these claims pursuant to the Family and Medical Leave Act (29 U,S.C. §2601 *et.seq.*) and the Americans With

Disabilities Act as amended *(*42 U.S.C § 12101 et.seq.) . The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a)

## III. VENUE

Venue is proper in the United States District Court for the Southern District of Texas under 28 U.S.C. § 1391(b) as the defendant resides in this district and a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

## IV. PARTIES

Plaintiff Brittney Foster is an individual residing in Houston, Harris County, Texas.

Defendant, CHI is a foreign corporation doing business in Houston, Harris County Texas. It may be served with citation on its registered agent CT Corporation, 1999 Bryan St. Suite 900, Dallas, Texas 75201-3136.

## V. FACTUAL ALLEGATIONS

1. Foster, began her employment with CHI in October of 2015. She was hired as a cardiovascular operating room (CVOR) nurse assigned to St. Luke's Medical Center in Houston.

2. Foster had joined the military after high school and spent five years in active duty. During that time, she obtained all her college prerequisites, but was forced to request approval for a change from active duty to either the National Guard or the reserves in order to be able to attend nursing school.

3. While working for CHI, Foster committed one (20 hour) weekend per month to the National Guard as part of her military service. Additionally, she was on call as the CVOR nurse two weekends per month.

4. After obtaining her Bachelor of Science in Nursing, Foster began a Master of Science in Nursing Leadership and Administration in 2016.

5. Foster transferred to CHI St. Luke's Heath-Brazosport Hospital in Lake Jackson in early 2017. After six months, Foster returned to St. Luke's Medical Center in Houston, where she resumed her duties as a CVOR nurse

6. In December 2017, Foster was promoted to a leadership role as Vascular Coordinator.

7. In order not to sacrifice the quality of her work as Vascular Coordinator, Foster made the decision to terminate her military service following her promotion in December of 2017. She officially left the national guard on December 31, 2017.

8. Foster's separation from the military was a very difficult decision and the transition to a purely civilian life was difficult for her.

9. In early 2018, Foster was dealing with personal issues due to a separation from her live-in partner, the transition to civilian life, along with the long work hours at St. Luke's and long-hours committed to her master's education. These pressures culminated in a breaking point.

10. On March 4, 2018, Foster contacted Shelley Burkett, the Director of the Cardiovascular Operating Room (CVOR), and requested to have Monday, March 5, 2018 off from work as a result of her precarious emotional state. Burkett directed Foster to April Bruce, the Charge Nurse and Foster's immediate supervisor. Bruce stated she could

not allow Foster to take time off because of understaffing issues. Bruce also directed Foster to see a psychiatrist regarding her mental health and depression, which was the basis for the request to take time off.

11. The following day, Foster consulted with her psychiatrist, who insisted that she take three weeks off from work to address ongoing issues with her mental health. She was prescribed medication to treat her depression.

12. Foster applied for Family Medical Leave through the Reed Group (the agency responsible for medical leave for St. Luke's) but was denied because the Reed Group failed to properly calculate Foster's term of employment with CHI. Instead, the Reed Group suggested that Foster take short term disability, which, while providing for compensation during her leave, would not protect her employment. Foster's leave began on March 5, 2018.

13. On March 13, 2018, while Foster was still on medical leave, she received a comment from Burkett concerning a picture Foster had posted to social medial on March 3, 2018. The picture, taken on March 2, 2018 during a TransCarotid Artery Revascularization (TCAR) procedure, did not depict any patient identifying information and in fact looked very similar to many other pictures posted to social media accounts by other hospital employees. Burkett asked Foster to delete the picture. Foster immediately removed the picture from her social media account and did not hear anything further from Burkett regarding the picture.

14. Foster returned from her three-week medical leave on March 26, 2018. Several days later, on March 29, 2018, Foster was called into the conference room where she was terminated and escorted out of the building by April Bruce.

15. Foster was allegedly terminated for a "posted a photo on Instagram/Facebook of a case in progress." In the termination paperwork, Burkett misrepresented that the photo and caption "gave the location of the procedure, the date of the procedure, the name/type of the procedure, and the surgeon performing the procedure." Burkett, in the termination paperwork, misrepresented the information that was actually on the social media post. The post merely said that Foster was with Andrew Auletti, Zachary Pallister, and Miguel Montero-Baker at CHI St. Luke's Health. The date on the Instagram post said March 3 at 10:11 AM (the day after the procedure), and the post caption merely said "Today's real MVP. #progressivethinker #TCAR #MMB." There is absolutely no identifying patient information in the post. Because the information allegedly supporting the termination was clearly false and Foster was aware that numerous other employees has posted similar pictures without being disciplined, Foster told the group that they would be hearing from her attorney.

16. The day after Foster's termination, Foster contacted EthicsPoint.com, a third-party agency that CHI St. Luke's employees are directed to for complaints. Foster told the individual with whom she spoke on the phone at Ethics Point, that she believed that Burkett terminated her in retaliation for having taken medical leave..

17. Several days later, Foster contacted Jalayne M. Bennett-Conway, a Sr. Employee Relations Specialist in Human Resources at St. Luke's to appeal her termination. Foster attended a meeting with Bennett- Conway and relayed the same concerns about the retaliatory termination for having taken medical leave for her disability. Bennett-Conway told Foster that she would conduct an investigation and give her a call once the investigation was complete.

18. On April 20, 2018, Foster received a letter from Bennett Conway. The letter stated that HR conducted an investigation and that they found "there was no patient rights' violation." Dispite there being no HIPAA violation, HR found that Foster had allegedly violated St. Luke's social media policy. HR offered to return Foster to her job under several punitive conditions. Foster would have to agree to a demotion from Vascular Coordinator, a leadership role, to an RN-III position and she would have to agree to relocate to the O'Quinn Medical Towers. This would mean that she would no longer be doing cardiovascular surgeries, as they do not do such procedures at the O'Quinn Medical Towers. The conditions also included that Foster would receive a final written warning and that her time off would be considered an unpaid suspension. Foster was unwilling to subject herself to these punitive conditions of employment, including a demotion. Foster, through her attorney, rejected the punitive offer of reemployment.

19. Following Foster's termination, St. Luke's reported Foster to the Board of Nursing for allegedly "[taking] pictures of Patient Medical Record Number 02838660, during a Cath Lab procedure and post[ing] the pictures on social media. The pictures included patient identifying information." Despite HR's investigation finding that there were no HIPAA violations of patients' rights, CHI sought to jeopardize Foster's nursing license by filing a false and misleading complaint to the Board of Nursing regarding the events that transpired on March 3, 2018.

20. The Board of Nursing found that there was no HIPPA violation and dismissed the complaint made by CHI.

21. In addition to being singled out for alleged Social Media policy violations while other employees remained with the company, Foster was also barred from receiving

several procedural remedies to which she was entitled. More specifically, Foster was denied her due process rights pursuant to Texas Administrative Code §217.19(d). Under this statute, "a licensed nurse subject to incident-based nursing peer review is entitled to minimum due process under TOC §303.002(e) (NPR Law)." As a qualifying licensed nurse, Foster was denied due process under this statute.

22.    First, in violation of Tex. Admin. Code §217.19(d)(3)(C), St. Luke's denied Foster her right to a written notice in person or by certified mail at her last known address on file with the facility. In this notice, St. Luke's was required to notify Foster that her practice was being evaluated and that the incident-based nursing peer review committee would meet on a specified date between 21 and 45 calendar days from the notice date. Moreover, this notice should have included the following:

(i)    a description of the event(s) to be evaluated in sufficient detail to inform the nurse of the incident, circumstances and conduct (error or omission), including date(s), time(s), location(s), and individual(s) involved. The patient/client shall be identified by initials or number to the extent possible to protect confidentiality but the nurse shall be provided the name of the patient/client;

(ii)    the name, address, telephone number of contact person to receive the nurse's response; and

(iii)    a copy of this rule (§217.19 of this title) and a copy of the facility's incident-based nursing peer review plan, policies and procedures.

Furthermore, Tex. Admin. Code §217.19(d)(3)(D) and (F) also required St. Luke's to do the following:

    (E)    provide the nurse the opportunity to review, in person or by attorney, the documents concerning the event under review, at least 15 calendar days prior to appearing before the committee;

    (F)    provide the nurse the opportunity to:

        (i) submit a written statement regarding the event under review;

        (ii)    call witnesses, question witnesses, and be present when testimony or evidence is being presented;

        (iii)    be provided copies of the witness list and written testimony or evidence at least 48 hours in advance of proceeding;

        (iv)    make an opening statement to the committee;

        (v) ask questions of the committee and respond to questions of the committee; and

        (vi)    make a closing statement to the committee after all evidence is presented.

Lastly, §217.19(d)(3)(G) – (I), requires that St. Luke's adhere to the following requirements:

    (G)    complete its review no more than fourteen (14) calendar days after the incident-based nursing peer review hearing, or in

compliance with subparagraph (C)(ii) of this paragraph relating to consultation with a patient safety committee;

(H) provide written notice to the nurse in person or by certified mail at the last known address the nurse has on file with the facility of the findings of the committee within ten (10) calendar days of when the committee's review has been completed; and

(I) permit the nurse to file a written rebuttal statement within ten (10) calendar days of the notice of the committee's findings and make the statement a permanent part of the incident-based nursing peer review record to be included whenever the committee's findings are disclosed.

23. During St. Luke's alleged peer review process, Foster was denied these due process rights to which licensed nurses subject to incident-based review are entitled under Tex. Admin. Code §217.19(d). CHI failed to provide Foster with written notices containing the requisite information as required by the statute. Furthermore, CHI failed to provide Foster with an opportunity to review, in person or by attorney, documents concerning the event under review at least 15 days prior to appearing before the committee. Similarly, Foster was neither permitted to submit her written statement regarding the events under review, nor to call witnesses or make an opening statement to the committee. Consequently, Foster was denied the procedural due process rights allotted to all qualifying licenses nurses, including those terminated by CHI following an incident-based peer review.

24. The actions of CHI, through its agent Burkett, were done out of malice or personal animosity towards the Foster, or knowingly or recklessly denying a nurse due process.

## CAUSES OF ACTION

**Violation of the Family and Medical Leave**

29 USC § 2614 provides that a qualified employee who takes Family and Medical Leave is to be restored to his or her position upon return of leave.  29 U.S.C. § 2615 prohibits employers from interfering with the rights of an employee who takes Family and Medical Leave.

CHI refused to return Foster to her prior position and instead terminated her because she took leave.

**Americans With Disabilities Act**

During the course of Foster's request for medical leave, CHI through Burkett learned of Foster's disability.  CHI terminated Foster because of her disability or perceived disability in violation of the Americans with Disability Act.

**Wrongful Termination Pursuant to TAC §217.19(d)**

CHI failed to allow Foster her due process rights as required by Texas Administrative Code §217.19(d).  This failure was done in bad faith and with malice justifying the award of punitive damages.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Brittney Foster prays that Defendant be cited to appear and that on final trial of this matter that the Court award her:

a. lost wages and benefits from March 29, 2018 the date of judgment less any earnings in the interim;

b. front pay;

c. compensatory damages in an amount not to exceed $300,000;

d. attorney fees;

e. pre-judgment interest and post-judgment interest on all such sums;

f. costs of court; and

g. all other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

By: ___/s/ Linda D. King___
Linda D. King
**GORANSONKING, PLLC**
State Bar No. 11455600
So. Dist. NO. 6060
1415 N. Loop W., Suite 1100
Houston, Texas 77008
Phone: (713) 526-9200
Fax:    (713) 526-9202
king@goransonking.com

**ATTORNEYS FOR PLAINTIFF BRITTNEY FOSTER**